UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.                                                                   Crim. No. 03-69(5) (JNE)
                                                                   ORDER

Eugene Arthur Blaylock,

       Defendant.

On August 12, 2003, after a three-week trial of Eugene Arthur Blaylock (Defendant) and four co-defendants, a jury found Defendant guilty of aiding and abetting possession with intent to distribute 50 grams or more of methamphetamine. The Court sentenced Defendant to 120 months of imprisonment. Defendant appealed, and the United States Court of Appeals for the Eighth Circuit affirmed. *United States v. Blaylock*, 421 F.3d 758 (8th Cir. 2005). On August 27, 2008, Defendant moved for a new trial. For the reasons set forth below, the Court denies the motion.

"Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Defendant was found guilty more than five years before he filed this motion. The Court therefore denies his motion as untimely. *See United States v. Mojica-Rivera*, 435 F.3d 28, 33 (1st Cir. 2006).[1]

---

[1] Defendant's assertion that this motion is timely has no merit. He acknowledges that a motion under Rule 33 must be filed within three years of a verdict or finding of guilty. Citing the advisory committee notes to the 1998 amendments to Rule 33, Defendant asserts that courts interpret "within 3 years after the verdict or finding of guilty" to refer to the action of the court of appeals. The notes flatly contradict Defendant's assertion. Before the 1998 amendments, the notes state the time for filing a motion for a new trial based on newly discovered evidence ran from "final judgment." It was that language—"final judgment"—that courts had interpreted to refer to the action of the court of appeals. *See United States v. Reyes*, 49 F.3d 63, 66 (2d Cir. 1995) (collecting cases). Recognizing the "great disparity" in the amount of time allowed to file a motion for a new trial caused by use of the appellate court's final judgment, the committee

1

Even if Defendant's motion was timely, the evidence on which Defendant relies is not newly discovered. Defendant supports his motion with a telephone interview of one of his co-defendants, Timothy Ehrmann, by Defendant's counsel on March 7, 2008, more than four years after the trial at which Ehrmann did not testify. In general, "belated exculpatory testimony by a codefendant who did not testify at trial is not newly discovered evidence warranting the grant of a new trial." *United States v. Lofton*, 333 F.3d 874, 876 (8th Cir. 2003).

Defendant nevertheless asserts that Ehrmann's statement is newly discovered because Defendant attempted to produce Ehrmann at trial and Ehrmann invoked his privilege against self-incrimination.[2] In *Lofton*, the Eighth Circuit indicated that a defendant facing similar circumstances could move to sever his trial:

> Conceding that "'newly available' evidence is not necessarily 'synonymous' with 'newly discovered' evidence," Lofton nonetheless argues that his new trial motion was in fact based upon newly discovered evidence because he was not aware of Espinosa's willingness to testify until after the trial. We reject this contention. Before trial, Lofton knew the relevant fact at issue—whether Espinosa had advised Lofton during the course of their travels that Espinosa was carrying illegal drugs in the vehicle. Knowing that fact, Lofton could have called codefendant Espinosa as a defense witness at trial. Perhaps Espinosa would have invoked his privilege against self-incrimination and refused to testify. In that event, Lofton could have moved to sever his trial from Espinosa's, which would have tested whether Espinosa's unavailable testimony would deprive Lofton of a fair trial. In these circumstances, the district court did not abuse its discretion in relying upon the general rule that belated exculpatory testimony by a codefendant who did not testify at trial is not newly discovered evidence warranting the grant of a new trial.

---

"remove[d] that element of inconsistency by using the trial court's verdict or finding of guilty as the triggering event." Fed. R. Crim. P. 33 advisory committee notes (1998 amendments).

[2]   On appeal, Defendant argued that the Court erred by allowing Ehrmann to be excused from testifying. *Blaylock*, 421 F.3d at 770. Defendant intended to call Ehrmann as a defense witness and subpoenaed him. *Id.* Ehrmann declined to testify and invoked the Fifth Amendment. *Id.* Defendant "never called Ehrmann as a witness or moved the district court to compel Ehrmann to testify." *Id.* The Eighth Circuit found no error in the alleged failure to compel Ehrmann's testimony. *Id.*

*Id.* (citation omitted).  Here, Defendant did move to sever his trial, and the Court denied his motion.  In his direct appeal, Defendant argued that the Court erred by denying his motion to sever, and the Eighth Circuit rejected the argument:

> The district court was not required to grant severance simply because [Defendant] claimed he needed a separate trial in order to call co-defendant Ehrmann as a witness.  Rather, [Defendant] needed to establish the likelihood Ehrmann actually would have testified and his testimony would have been exculpatory.  The record establishes that, when [Defendant] filed his pretrial motion for severance, he never represented to the district court Ehrmann would be willing to testify on [Defendant's] behalf.  Nor is the record sufficiently clear Ehrmann's testimony, if adduced, would have been exculpatory.  Although Ehrmann told an Arizona detective on September 11, 2002, [Defendant] "never saw [the drugs] directly," Ehrmann also made multiple inculpatory statements: (1) Ehrmann and [Defendant] "had talked about getting together and buying meth"; (2) "[Defendant] used meth during their trip"; and (3) "[Defendant] should've known what was happening."
>
> At trial, [Defendant] renewed his motion for severance, claiming Ehrmann was willing to testify.  Then on August 5, 2003, [Defendant's] counsel discovered Ehrmann was not willing to testify. The next day, Ehrmann's counsel informed the district court Ehrmann was contemplating testifying to information related exclusively to [Defendant's] case, but defense counsel acknowledged "the problem, obviously, for Mr. Ehrmann is . . . [the prosecutor] would then feel compelled to go into the free talk that occurred down in Arizona."  Ehrmann's counsel then offered Ehrmann's testimony if Ehrmann were allowed to answer only questions asked by [Defendant's] counsel or by Ehrmann's own counsel.  When the district court properly ruled Ehrmann would be subject to the government's cross-examination if he took the stand, Ehrmann's counsel advised the district court Ehrmann was inclined to invoke his Fifth Amendment rights.  Absent a firm representation Ehrmann would be willing to testify on [Defendant's] behalf, the district court did not abuse its discretion in denying the motion to sever.

*Blaylock*, 421 F.3d at 766-67 (citations omitted).  Under these circumstances, the general rule that "belated exculpatory testimony by a codefendant who did not testify at trial is not newly discovered evidence warranting the grant of a new trial" applies.  *See Lofton*, 333 F.3d at 876.

Finally, even if Defendant's motion was timely and relied on newly discovered evidence, Defendant must show that the newly discovered evidence would probably produce an acquittal to obtain relief under Rule 33.  *United States v. Holmes*, 421 F.3d 683, 687 (8th Cir. 2005).  In

3

rejecting the argument that there was insufficient evidence to support Defendant's conviction, the Eighth Circuit summarized the evidence against Defendant:

> With the exception of a couple incriminating e-mail messages in May 2002, the government's inculpatory evidence against [Defendant] consisted of his conduct between June 2, when he joined Ehrmann and [another individual] in Dallas, and June 8, when he was arrested outside Flagstaff.  The government presented evidence that during this period [Defendant] (1) admitted to [an] Arizona detective the purpose of the return trip to Phoenix was to purchase a distributable quantity of methamphetamine; (2) admitted he was taking the vacation with Ehrmann for the purpose of having Ehrmann set him up dealing illegal drugs; (3) assisted in the purchase of the methamphetamine by cashing two checks and tendering the proceeds to Ehrmann, who then purchased the methamphetamine with the check proceeds; and (4) assisted Ehrmann in driving the vehicle.  Sufficient evidence existed for a reasonable jury to find beyond a reasonable doubt [Defendant] aided and abetted possession of methamphetamine with intent to distribute.

*Blaylock*, 421 F.3d at 773.  The e-mail messages mentioned by the Eighth Circuit include a message sent by Ehrmann to Defendant a few weeks before the trip to Arizona in which Ehrmann "apologize[d] for not getting those samples down to [Defendant]."  *Id.* at 762.  A few days later, Defendant wrote to Ehrmann that "demand is high and supply is low" and that "[p]rime time to establish a working relationship is upon us."  *Id.*

In the March 2008 interview, Ehrmann acknowledged that he went to Arizona to buy drugs.  Initially, Ehrmann stated that Defendant "really didn't have any involvement" in the drug transaction.  Later, Ehrmann acknowledged that he probably told Defendant the purpose of the trip: "I can't say specifically that I said, you know, that I'm here to get drugs.  I'm gonna probably say that probably came up at some point, and said well I'm here to get something."  Ehrmann also acknowledged that Defendant knew Ehrmann had already cashed checks and that Defendant cashed checks so as not to raise suspicions:

> I don't remember specifically what I told him . . . it's like why do I need you to cash them . . . why I can't . . . other than the fact I think I did tell him that I had already cashed a couple of checks myself and didn't want to have my name being all over the different banks that would . . . all over U.S. Bank where I was cashing

> the checks. Yeah I wanted it . . . you know . . . to be under a couple of different names so it wasn't like raising a bunch of eyebrows.

Having reviewed Ehrmann's March 2008 statement, the Court concludes that Defendant has not demonstrated the statement would probably produce an acquittal.

In short, Defendant's motion is not timely. The motion does not rely on newly discovered evidence. Defendant has not demonstrated that the proffered evidence would probably produce an acquittal. Accordingly, the Court denies Defendant's motion.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for a new trial [Docket No. 400] is DENIED.

Dated: September 29, 2008

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge